IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HUDSON INSURANCE COMPANY, a Delaware corporation,<br><br>　　　　　Plaintiff,<br>v.<br><br>TRIPLE T CONSTRUCTION, INC., a Utah company; LINDA GURULE, an individual; DOES I through X, ROE CORPORATIONS I through X,<br><br>　　　　　Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:20-cv-00504-TC<br><br>District Judge Tena Campbell |

Before the court is Plaintiff Hudson Insurance Company's motion for entry of default judgment against Defendants Triple T Construction, Inc., and Linda Gurule. (ECF No. 20.) The Clerk of the Court previously issued default certificates against both Defendants. (ECF Nos. 17 & 18.) Neither Defendant has responded to the motion. Having reviewed the motion and having assessed both the merits of Hudson's complaint and the court's jurisdiction, the court GRANTS IN PART Hudson's motion and enters default judgment against the Defendants.

## FACTS[1]

The facts in this case are relatively straightforward. Triple T is a construction company that obtained a $50,000 Utah Contractor's license bond (the "Bond") from Hudson in March 2017. (Ms. Gurule is Triple T's president.) Prior to issuing the Bond, Hudson had Triple T and Ms. Gurule sign an Indemnity Agreement, which requires the Defendants to indemnify Hudson

---

[1] All facts come from Hudson's complaint (ECF No. 2). Once the Defendants are in default—which they are—the court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." Archer v. Eiland, 64 F. App'x 676, 679 (10th Cir. 2003).

from all liability under any bonds issued by Hudson on behalf of Triple T, including "all incurred loss and expenses of whatever kind including, but not limited to, investigation costs, interest, court costs and attorney fees . . . stemming from [Hudson] either furnishing the Bond or enforcing this Agreement." (Mot. for Default J. Ex. 2 at 3, ECF No. 20-2.)

Two years passed without incident, but in April 2019, Ross Construction Management, Inc. (RCM) sued Hudson, seeking to collect the Bond's $50,000 penal sum.[2] In its Utah state court complaint, RCM alleged that Triple T had failed to repay an RCM-issued loan, failed to pay RCM for construction work, and failed to abide by a settlement agreement with RCM. Citing the Indemnity Agreement, Hudson demanded that Triple T post $50,000 collateral, but Triple T never did. Triple T contested the Bond obligation to RCM, so the case continued into discovery. Eventually, by April 2020, Hudson settled with RCM and paid RCM the $50,000 penal sum, (Ex. 5 at 2, ECF No. 20-5), but not before Hudson had incurred thousands of dollars in costs and attorneys' fees. In July 2020, after Triple T's repeated failures to indemnify or repay Hudson for its losses, Hudson filed the present suit.

## ANALYSIS

In deciding Hudson's motion, the court must first confirm that it has subject-matter jurisdiction over the claims and personal jurisdiction over the Defendants. Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997). This is because "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

---

[2] A penal sum is "[t]he monetary amount specified as a penalty in a penal bond." A penal bond is "[a] bond requiring the obligor to pay a specified sum as a penalty if the underlying obligation is not performed." Black's Law Dictionary (11th ed. 2019). Based on Hudson's references to the Bond's $50,000 "penal sum," the Bond is presumably a penal bond.

I.      **Jurisdiction**

To begin, the court has subject-matter jurisdiction here. The diversity statute, 28 U.S.C. § 1332(a), which Hudson invokes, gives district courts subject-matter jurisdiction over civil suits between citizens of different states and in which the amount in controversy exceeds $75,000. Those requirements are met here. First, Triple T is a Utah corporation with its principal place of business in Utah, Ms. Gurule is a Utah citizen, and Hudson is a Delaware corporation with principal place of business in New York, so the parties are completely diverse. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806). Second, Hudson alleges that the total amount in controversy exceeds $100,000 (the amount of the settlement paid to RCM plus the attorneys' fees and costs incurred in contesting the bond obligation in Utah state court).[3] Clearly the court has subject-matter jurisdiction over the claims.

Next, the court also has personal jurisdiction over both Defendants. The court can exercise personal jurisdiction over any person domiciled in Utah and any corporation either incorporated in Utah or whose principal place of business is in Utah. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). As stated above, Triple T is a Utah corporation with its principal place of business in Utah, and Ms. Gurule is a Utah citizen. Therefore, the court has general personal jurisdiction over both Defendants.

Additionally, Hudson submitted proof of service for both Defendants. Specifically, the process server certified that on July 21, 2020, he served a copy of the summons and complaint on Barry Wickel, Ms. Gurule's coresident of suitable age and discretion. (ECF No. 7.) The same process server certified that on October 11, 2020, he served a copy of the summons and

---

[3] Hudson's motion asks for $146,708.58, of which $117,528.50 is not interest or costs. See 28 U.S.C. § 1332(a) (requiring that the amount in controversy be more than "$75,000, exclusive of interest and costs").

complaint on Ms. Gurule as the registered agent of Triple T.  (ECF No. 9.)  Both events fall within the ninety-day window prescribed by Federal Rule of Civil Procedure 4(m).

## II.     Entry of Default

Hudson also properly obtained certificates of default from the Clerk of the Court.  After Ms. Gurule and Triple T were served with process, their responsive pleadings were due on August 11, 2020, and November 2, 2020, respectively.  (See ECF Nos. 7, 10.)  Neither Defendant filed an answer or motion to dismiss.  After several months passed, the court issued an order to show cause on April 7, 2021, (ECF No. 11), and Hudson responded on April 30, 2021 (ECF No. 13).  Hudson was in settlement talks with Ms. Gurule's son, but those conversations seemingly ended without a resolution.  (See id.)  Judge Oberg then gave Hudson until May 4, 2021, to move for entry of default.  (ECF No. 15.)  On May 3, Hudson did just that, supported by an affidavit signed by its attorney, Kurt Faux.  (ECF Nos. 16, 16-1.)  By the end of the month, the Clerk of the Court entered default against both Defendants.  (ECF Nos. 17, 18.)

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Because Ms. Gurule and Triple T failed to plead or otherwise defend against Hudson's lawsuit, and that failure was supported by Mr. Faux's affidavit, the clerk properly entered the Defendants' default.

## III.    Entry of Default Judgment

With jurisdiction established and the propriety of the entries of default confirmed, the court turns to consider whether to enter default judgment here.  "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court."  Cablevision of S. Conn., L.P. v. Smith, 141 F. Supp. 2d 277,

4

281 (D. Conn. 2001) (quoting Shah v. N.Y. State Dep't of Civil Serv., 168 F.3d 610, 615 (2d Cir. 1999)). The court has broad discretion in deciding whether to enter a default judgment. Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987). Once a defendant is found to be in default, the court must "t[ake] as true all factual allegations in the complaint, except those pertaining to the amount of damages." Archer v. Eiland, 64 F. App'x 676, 679 (10th Cir. 2003); Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

A. Liability

Taking the allegations in the complaint as true, Hudson's complaint provides a "sufficient basis in the pleadings" for default judgment to be entered on its first cause of action, contractual indemnity.[4] Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010). "Courts have upheld general indemnity agreements in favor of sureties." Travelers Cas. & Sur. Co. of Am. v. CraCar Constr. Co., No. 2:17-00100-DS, 2018 WL 3873678, at *3 (D. Utah Aug. 15, 2018). An indemnity agreement "is a contract, enforceable under Utah law, against those persons who are a party to the agreement." Int'l Fid. Ins. Co. v. La Porte Constr., Inc., No. 2:16-cv-00032-JNP-EJF, 2019 WL 575886, at *4 (D. Utah Feb. 12, 2019).

Although Hudson calls its first claim "contractual indemnity," it has essentially pleaded the elements of breach of contract.[5] In Utah, there are four elements to a breach of contract: (1) the existence of a valid and enforceable contract, (2) the plaintiff having performed its contractual obligations, (3) the defendant(s) having breached the contract, and (4) the plaintiff

---

[4] Hudson only requests entry of default judgment on the first cause of action. (See Mot. for Default J. at 9–11, ECF No. 20.) Presumably, this is all it needs to hold the Defendants liable for the full amount due.

[5] In its motion, Hudson calls Triple T's failure to provide $50,000 collateral in April 2019 Triple T's "first contractual breach." (See Mot. for Default J. at 14, ECF No. 20.)

having suffered damages. See Bair v. Axiom Design LLC, 2001 UT 20, ¶ 14, 20 P.3d 388, 392. Hudson's complaint satisfies these elements. First, Hudson alleges that the Defendants executed the Indemnity Agreement (which was partial consideration for Hudson issuing the Bond) and are therefore bound by it. (Compl. ¶¶ 9, 21, ECF No. 2.) Second, Hudson alleges that it issued the $50,000 bond and settled the RCM lawsuit "pursuant to the terms of the Bond and the Indemnity Agreement," fulfilling its side of the bargain. (Id. ¶¶ 10, 16–17, 22.) Third, Hudson alleges that the "Defendants have refused or otherwise failed to indemnify Hudson for the aforesaid losses," which is a breach of their obligations under the contract. (Id. ¶ 23.) Finally, Hudson alleges that it has "already incurred losses in excess of $100,000.00 as a result of issuing the Bond." (Id. ¶ 18.) The court finds that the Defendants, as signatories of the Indemnity Agreement, are liable under the contract.

B. Damages

The court cannot blindly approve Hudson's requested damages. Instead, the final step of the default judgment analysis is determining the amount for which the Defendants are liable. "[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985) (citing Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983)). Otherwise, Federal Rule of Civil Procedure 55(b)(2) permits the court to hold a hearing if the court needs to "conduct an accounting" or "determine the amount of damages."

Hudson seeks a total of $146,708.58 in damages. It provides the following cost breakdown: $50,000 for the RCM settlement, $67,528.50 in attorneys' fees, $1,046.86 in costs,

6

and $28,133.22^6$ in prejudgment interest. The court finds that the damages in this case are capable of mathematical calculation and will assess each category in turn.

1. Compensatory Damages

Hudson's request for $50,000 in damages that it spent settling the RCM lawsuit is ascertainable based on Hudson's submissions in support of its motion. Hudson has given the court copies of the original Bond (Ex. 1, ECF No. 20-1), the Indemnity Agreement (Ex. 2, ECF No. 20-2), a demand letter sent to the Defendants (Ex. 3, ECF No. 20-3), the settlement agreement with RCM (Ex. 5, ECF No. 20-5), and Mr. Faux's affidavit (Ex. 9, ECF No. 20-9). These papers conclusively establish that (1) the Defendants agreed to indemnify Hudson for any Bond-related losses, (2) Hudson incurred a $50,000 Bond-related loss, (3) Hudson demanded that the Defendants repay this sum, and (4) the Defendants have not done so. Because the Defendants have been found liable under the Indemnity Agreement, the court awards Hudson $50,000 to repay the Bond loss.

2. Attorneys' Fees and Costs

"As a general rule, trial courts are without authority to award attorney's fees unless the right exists by contract or statute." Paramount Pictures Corp. v. Thompson Theatres, Inc., 621 F.2d 1088, 1091 (10th Cir. 1980). In Hunt v. Inter-Globe Energy, Inc., the Tenth Circuit held that in the context of a default judgment, a court cannot award attorneys' fees "without a hearing to determine the amount." 770 F.2d at 148. However, if a contract provides for attorneys' fees, the court is free to award the plaintiff its reasonable attorneys' fees without a hearing. See Applied Cap., Inc. v. Gibson, 558 F. Supp. 2d 1189, 1211 (D.N.M. 2007). The Indemnity

---

[6] The $28,133.22 figure was calculated as of September 1, 2021. Prejudgment interest will continue to accrue until the day the court enters judgment against the Defendants. (See Mot. for Default J. at 15 n.3, ECF No. 20.)

Agreement requires that the Defendants reimburse Hudson for "investigation costs, interest, court costs, and attorney fees . . . stemming from [Hudson] either furnishing the Bond or enforcing this Agreement." (Ex. 2, ECF No. 20-2.) So far, Hudson has incurred a total of $67,528.50 in attorneys' fees and $1,046.86 in costs in the two lawsuits, though the amount that can be attributed to each case is not immediately clear. (Ex. 4 at 2, ECF No. 20-4.)

The court has serious concerns about the magnitude of the attorneys' fees sought in this case. The Bond only had a penal sum of $50,000. The RCM lawsuit only lasted for a year in state court before the parties settled. And in the fourteen months that this case has been pending, there have been no hearings, nor has there been any discovery, nor have the Defendants appeared, nor have there been any dispositive motions (besides the motion for default judgment). Given the posture of this case, $67,528.50 seems excessive. The court will therefore schedule a hearing in which it will hear evidence on the reasonableness of Hudson's fee request. For now, the court DENIES Hudson's request for attorneys' fees without prejudice.

3. Prejudgment Interest

Hudson also argues that it is entitled to prejudgment interest in the amount of 10% per annum. Because "[a] federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest," Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1288 (10th Cir. 2005), the court must look to Utah law on this issue. Prejudgment interest is appropriate in cases where the "amount due under [a] contract [is] ascertainable by calculation." Encon Utah, LLC v. Fluor Ames Kraemer, LLC, 2009 UT 7, ¶ 54, 210 P.3d 263, 273. In support, Hudson cites the current version of Utah Code Ann. § 15-1-1(2), which states that "[u]nless the parties to a lawful written . . . contract expressly specify a different rate of interest, the legal rate of interest for . . . a claim for breach of contract is 10% per annum."

8

However, this version of section 15-1-1 was recently amended by the Utah Legislature and only became effective on May 14, 2019. See Charles W. v. Regence BlueCross BlueShield of Ore., No. 2:17-cv-00824-TC, 2019 WL 6220060, at *1 (D. Utah Nov. 21, 2019); 2019 Utah Laws ch. 437. The Defendants' first breach of the Indemnity Agreement (when the Defendants failed to pay the $50,000 that Hudson demanded) predates this effective date by nearly a month. Therefore, the previous version of section 15-1-1 applies.

The previous version of section 15-1-1 said that "the legal rate of interest for the loan or forbearance of any money, goods, or chose in action shall be 10% per annum." See W. Sur. Co. v. Com. Coatings Corp., No. 1:20-cv-00004-CW, 2021 WL 662393, at *3 (D. Utah Feb. 19, 2021). In 2016, the Utah Supreme Court held that this version of section 15-1-1 should be interpreted narrowly. Specifically, it should be read as only applying to contracts for the "loan . . . of any money [or] goods," and contracts for the "forbearance of any . . . chose in action." USA Power, LLC v. PacifiCorp, 2016 UT 20, ¶ 108, 372 P.3d 629, 670. A chose in action is "[t]he right to bring an action to recover a debt, money, or thing." Black's Law Dictionary (11th ed. 2019). The Indemnity Agreement is not a contract for the "forbearance" of Hudson's right to bring an action against the Defendants; rather, it is the very contract under which Hudson has a right to sue in the first place.

Because Hudson's first claim against the Defendants arose during this "brief, three-year period when the statute was interpreted narrowly to exclude some contracts," Charles W., 2019 WL 6220060, at *1, it does not appear that Hudson is entitled to the 10% prejudgment interest rate it seeks. Instead, the court ought to impose prejudgment interest in the amount of "the federal postjudgment interest rate as of January 1 of each year, plus 2%." See USA Power, 2016 UT 20, ¶ 109, 372 P.3d at 670 (citing Utah Code Ann. § 15-1-4). Here, applying the federal rate

as of January 1, 2021, Hudson would be entitled to annual prejudgment interest in the amount of 2.11%.  See Fuller v. Bohne, 2017 UT App 28, ¶¶ 20–23, 392 P.3d 898, 904 (applying the 2015 federal rate to a claim that arose in 2007 but in which judgment was entered in 2015).  But because the court is leaving unresolved the attorneys' fees issue, the court will delay awarding prejudgment interest until it has heard oral argument on the issues.[7]  If after the hearing the court awards Hudson any attorneys' fees and costs, the court will amend the judgment to include those fees and costs, along with prejudgment interest on the total sum that it awards.  For now, the court DENIES Hudson's request for prejudgment interest without prejudice.

Accordingly,

**IT IS ORDERED** that Hudson's motion for entry of default judgment is GRANTED IN PART and DENIED IN PART.  Judgment is entered against Triple T and Ms. Gurule in the amount of $50,000 on Hudson's first cause of action, contractual indemnity.  The court reserves the right to amend this judgment to add attorneys' fees, costs, and/or prejudgment interest after a hearing on those issues.

DATED this 6th day of October, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

---

[7] In addition to hearing oral argument on the reasonableness of Hudson's attorneys' fees request, the court will hear argument on whether there are other grounds for imposing the 10% prejudgment interest rate, rather than the 2.11% rate.  Oral argument would be beneficial because Hudson did not brief the interest rate issue in its motion.